# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

DAWN M. PORTER,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 17-CV-00110-LTS

**REPORT AND RECOMMENDATION**

_____

Plaintiff, Dawn M. Porter ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, as well as her application for supplemental security income under Title XVI of the Social Security Act. Claimant contends that the Administrative Law Judge ("ALJ") who heard her claim erred in determining that claimant was not disabled.

For the reasons that follow, I recommend that the District Court **affirm** the ALJ's decision.

## I. BACKGROUND

I adopt the facts set forth in the parties' Joint Statement of Facts (Doc. 14) and therefore only summarize the pertinent facts here. Claimant alleged she became disabled on May 11, 2016.[1] (AR 13, 42-43).[2] Claimant was forty-seven years old when she

---

[1] Although the ALJ's decision reflects an alleged disability onset date of May 1, 2011, hearing testimony evidenced the revised date reflected above.

[2] "AR" refers to the administrative record below.

allegedly became disabled, and forty-eight years old at the time of the hearing. (AR 25, 42-43). Claimant completed the tenth grade, later earned a GED, attended cosmetology school, and also earned an Associate's Degree in Applied Science in information processing. (AR 44). Claimant previously worked as a cook in a nursing home and as a bank teller. (AR 46-48).

On June 15, 2016, claimant filed an application for disability insurance and benefits and supplemental security income. (AR 221, 225). The Social Security Administration denied the claim initially and on reconsideration. (AR 130-38, 143-46, 152-56). On June 7, 2017, ALJ Robert A. Kelly held a hearing on the matter. (AR 11, 41). On June 15, 2017, the ALJ issued a decision finding claimant was not disabled. (AR 11-26). On August 25, 2017, the Appeals Council denied review. (AR 1-4). The ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On October 16, 2017, claimant timely filed the instant complaint in this Court. (Doc. 4). By April 12, 2018, the parties had filed their briefs. (Docs. 15-17). On April 13, 2018, the Court deemed the case fully submitted and ready for decision. (Doc. 18). On that same date, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred this case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "[she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . .

in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id.* § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id.*).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work

3

setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do her past relevant work, then she is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must

show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since claimant's alleged onset date. (AR 13).

At Step Two, the ALJ found that claimant suffered from the following severe impairments: "depression, anxiety, personality disorders, and substance abuse/addiction disorders." (AR 14). The ALJ further discussed claimant's other documented impairments and found those impairments did not meet the definition of "severe" impairments under Social Security Administration regulations. (AR 14-15).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations. (AR 15-16).

At Step Four, the ALJ found that claimant had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> The claimant is limited to unskilled work in that she is able to understand, remember, and carry out only routine, repetitive tasks. The claimant should have no more than occasional interaction with coworkers and the general public. The claimant is able to maintain focus, attention, and concentration for only up to two hours at a time. There should be no more than occasional changes in the general nature of the work setting or work tasks.

(AR 16). Also at Step Four, the ALJ found claimant was unable to perform any past relevant work. (AR 24).

At Step Five, the ALJ found that, despite claimant's RFC, there were jobs that existed in significant numbers in the national economy claimant could still perform, including Hand Packager, Cleanup Worker, and Car Detailer. (AR 25-26). Therefore, the ALJ concluded that claimant was not disabled. (AR 26).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence

appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant alleges the ALJ committed reversible error in failing to afford proper weight to the opinions of claimant's treating psychologist, Laura Lundell, Psy.D (Doc. 15, at 10-17) and, as a result, the ALJ's decision was not supported by substantial medical evidence on the record as a whole. (*Id.*, at 21-24). Claimant also alleges that the Appeals

Counsel erred in failing to properly evaluate new and material evidence from Dr. Lundell. (*Id.*, at 18-20). I will address each of these issues in turn.

### A. Dr. Lundell's Opinions

Claimant argues that the ALJ should have afforded Dr. Lundell's opinions controlling weight, instead of the little weight the ALJ did afford Dr. Lundell's opinions. Dr. Lundell was a postdoctoral clinical psychologist who treated claimant from September 2016 through May 2017. In November 2016, Dr. Lundell wrote a "To Whom it May Concern" letter stating that claimant's moderate amphetamine use disorder was in early-sustained remission. (AR 589-90). Dr. Lundell further stated that, as a result of Posttraumatic Stress Disorder (PTSD), claimant had dissociative episodes in which claimant felt disconnected from reality and experienced paranoia, flashbacks, concentration and memory difficulties, and associated avoidance of a multitude of trauma indicators. (*Id.*). As a result, Dr. Lundell opined, claimant had a marked restriction in social functioning, repeated episodes of prolonged decompensations, and marked difficulties in maintaining concentration. (*Id.*). Dr. Lundell concluded, therefore, that claimant met the criteria for Listing 12.06 pertaining to anxiety disorders. (AR 590).

On May 30, 2017, Dr. Lundell completed a Mental Residual Functional Capacity Questionnaire. (Doc. 606-608). In the check-box portion of this form, Dr. Lundell opined that claimant was "unable to meet competitive standards" of unskilled work with respect to the following mental abilities:

> Maintain regular attendance and be punctual within customary, usually strict tolerances
>
> Make simple work-related decisions
>
> Complete a normal workday and workweek without interruptions from psychologically based symptoms

8

> Perform at a consistent pace without an unreasonable number and length of rest periods
>
> Accept instructions and respond appropriately to criticism from supervisors.

(AR 607). Dr. Lundell opined that claimant would be "seriously limited, but not precluded" in another eight categories of mental abilities to perform unskilled work. (*Id.*). In the section of the form that required an explanation for such limitations, Dr. Lundell wrote:

> [Claimant]'s avoidance symptoms that come with PTSD cause her to often feel or be detached from everyday life. During these period of detachment or distraction, [claimant] may not communicate well, may avoid situations/people that remind her of the trauma. Additionally, [claimant] is likely to experience memory loss and lack empathy due to her overall detachment from her own emotional state. [Claimant's] heightened state of vigilance of awareness that comes with her PTSD results in trouble concentrating and focusing. Given this heightened state of arousal, [claimant] is experiencing sleep difficulties and may overreact to everyday experiences and may get scared easily or have frequent, emotional outbursts.

(AR 607). Dr. Lundell also opined that claimant would be "seriously limited, but not precluded" from performing mental abilities and aptitudes needed to do particular types of jobs that involved interaction with the general public, maintaining socially appropriate behavior, and using public transportation, and would be unable to meet competitive standards in traveling in an unfamiliar place. (AR 608). Dr. Lundell left blank, however, the space in which she was supposed to explain these limitations. (*Id.*). Dr. Lundell also checked a box indicating that claimant's impairments would, on average, cause claimant to be absent from work more than four days per month. (*Id.*). Dr. Lundell did not provide any explanation for these absences.

The ALJ gave little weight to Dr. Lundell's opinions. (AR 21). The ALJ found that Dr. Lundell's "initial opinion lacked analysis and citation to supporting signs or laboratory findings, and was not well reasoned." (*Id.*). The ALJ further found that Dr. Lundell's opinion that claimant met a listed impairment invaded the province of the Commissioner. (*Id.*). The ALJ also found Dr. Lundell's opinions were entitled to little weight because they were inconsistent with and not supported by the objective medical evidence. (*Id.*). The ALJ found the opinions to be inconsistent with the psychiatric records and evaluations performed by Shelby Allen-Benitz, ARNP, who treated claimant from December 2013 through 2016. The ALJ also found Dr. Lundell's opinions inconsistent, in some cases "dramatically inconsistent," with her own records. (*Id.*).

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009)); 20 C.F.R. § 404.1527(d)(2). "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007). A treating physician's opinion, however, "does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "It may have 'limited weight if it provides conclusory statements only, or is inconsistent with the record.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Samons*, 497 F.3d at 813). "The ALJ 'may discount or even disregard the opinion . . . where other evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)). Ultimately, an ALJ must "give good reasons" for the weight given to a treating

physician's opinion. 20 C.F.R. § 404.1527(d)(2); *See also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation.").

I find the ALJ properly discounted the weight he afforded to Dr. Lundell's opinions. First, the ALJ correctly concluded that Dr. Lundell's opinions were not well reasoned, lacked analysis, and were unsupported by citation to signs and laboratory reports. In her November 2016 opinion, Dr. Lundell opined that claimant met the criteria for Listing 12.06, Anxiety-related disorders, but did not explain how she reached this conclusion. (AR 589-90). Although Dr. Lundell briefly discussed claimant's diagnoses of PTSD and amphetamine use disorder, Dr. Lundell did not explain how the existence of the two diagnoses led her to conclude that claimant met Listing 12.06, and the relationship is not readily apparent.

Second, the ALJ correctly noted that Dr. Lundell's opinion that claimant's impairments met the requirements for a listed impairment invaded the Commissioner's province. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.").

Third, the ALJ correctly found that Dr. Lundell's opinions were inconsistent with psychiatric records and evaluations performed by Ms. Allen-Benitz. In contrast to Dr. Lundell's significant limitations regarding work-like procedures, Ms. Allen-Benitz noted during the same timeframe that claimant was "Alert and oriented to all spheres. Recent and remote memory appears intact. No evidence of current hallucinations, delusions, paranoia, and obsessions. Thought process is linear, logical, and goal-directed. Denies current suicidal or homicidal thoughts, plan, or intent. Judgment, reasoning, and insight

are considered fair. Impulse control is considered fair." (AR 592). In October 2016, Ms. Allen-Benitz noted very similar findings and added that claimant appeared to be of at least average intelligence. (AR 569). Further, Dr. Lundell's own records are inconsistent with her opinions. Claimant reported assisting her stepdaughter in the stepdaughter's salon (AR 594), had started an Etsy business with her stepdaughter (*id.*), had travelled to Minnesota (AR 595), reported improvement following a change in her living situation (*id.*), and was dating. (AR 596). The ability to engage in activities of this sort are inconsistent with the disabling anxiety to which Dr. Lundell opined.

Importantly, there is substantial evidence in the record as a whole to support the ALJ's RFC assessment. Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record. *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The ALJ did rely on other such medical evidence in assessing claimant's RFC. The ALJ afforded great weight to the state agency medical and psychological consultants. (AR 24). The psychological consultants found that claimant had affective disorders, anxiety disorders, personality disorders, and substance addiction disorders, all of which the consultants considered to be severe impairments. (*Id.*). Further,

> [t]he psychologists found the claimant would have mild restrictions in daily activities, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and no episodes of decompensation. Functionally, the consulting psychologists opined the claimant would have some difficulty concentrating for extended periods, remembering, understanding, and carrying out detailed instructions, and would experience some difficulty interacting appropriately with others at times. However, the psychologists opined the claimant retained the

capacity to perform simple, repetitive tasks consisting of 1-2 step commands in a work setting with reduced social interaction.

(*Id.*). In addition to the consultants, the ALJ considered medical records from David Fox, LISW, who "noted impressions of posttraumatic stress disorder, adjustment disorder with anxiety, amphetamine dependence, and a GAF score of 48." (AR 18). As noted above, the ALJ also considered the opinions of Ms. Allen-Benitz and afforded Dr. Lundell's opinions little weight, which is greater than no weight.

The ALJ also considered the records obtained from Courtney Hoelscher, ARNP (AR 19), Rogerio Ramos, M.D. (*id.*), and Daniel Courtney, Ph.D. (AR 19-20), though the ALJ did not engage in an in-depth discussion of the findings of any of the aforementioned. Even if the ALJ did not rely on the records of the three final practitioners in assessing claimant's RFC, and instead merely noted the existence of the records, I would still find that the ALJ's decision is supported by substantial evidence on the record as a whole. The assessments from the state agency consultants are highly probative on claimant's disability status, as are Ms. Allen-Benitz's notes, and Dr. Lundell's notes, even though the ALJ discounted the weight afforded to the latter. As such, I recommend that the Court find that the ALJ did not err in assessing claimant's RFC. Further, I recommend that the Court find that the ALJ's decision is supported by substantial evidence on the record as a whole.

### B. *Appeals Council Decision*

Claimant next contends that the Appeals Council erred in failing to consider new and material evidence from Dr. Lundell when it declined to review the ALJ's decision. (Doc. 15, at 18-20). Specifically, claimant argues that "Dr. Lundell's July 14, 2017 letter attempting to correct the ALJ's misinterpretation of her individual therapy notes clearly constitutes new and material evidence that should have been addressed by the Commissioner on appeal." (*Id.*, at 18 (citation omitted)). The letter to which claimant

refers attempts to explain the inconsistencies the ALJ perceived between Dr. Lundell's treatment notes and her formal opinion, which the ALJ found assessed greater limitations than her treatment notes supported. (AR 38). The letter provides, in relevant part:

> Please note that psychotherapy notes are not intended by psychologists or other mental health providers providing psychotherapy, [sic] to document disability. Indeed, actual psychotherapy notes and certification of disability are two different things and are never intended by the author to document disability. It is for this reason that psychotherapy notes may differ from other, more formal, diagnostic assessments.

(*Id.*).

As an initial matter, the Court does not have jurisdiction to review the Appeals Council's decision denying review. The Eighth Circuit Court of Appeals has held that "review is limited by statute to the final decision of the Commissioner, which is the judge's final decision. [The Court] ha[s] no jurisdiction to review the Appeals Council's non-final decision to deny review." *Piepgras v. Chater*, 76 F.3d 233, 238 (8th Cir. 1996) (citing *Browning v. Sullivan*, 958 F.2d 817, 822-23 (8th Cir. 1992)). As a result, I find that claimant's request that the Court review the Appeals Council's consideration of Dr. Lundell's letter to have been improperly brought and, therefore, I recommend that the Court reject this argument for lack of jurisdiction. Although the Court should consider Dr. Lundell's letter in rendering its decision, and I have considered the letter, claimant's argument does not pertain to this Court's review. Claimant's argument pertains only to the Appeals Council's consideration of the letter, which is an issue over which this Court lacks jurisdiction.

Even if this Court did have jurisdiction to review the Appeals Council's action, I would still recommend that the Court uphold the final decision of the Commissioner. Although the letter explains the differences between psychotherapy notes and disability certifications, the letter does not address the marked differences and inconsistencies with

other medical evidence of record and with claimant's own subjective allegations. Further, Dr. Lundell's letter, much like her treatment notes, lacks analysis and is vague. For instance, Dr. Lundell does not identify the psychotherapy notes that she is addressing when explaining why differences may exist. Perhaps Dr. Lundell means all of the psychotherapy notes, but it is simply unclear. As a result, while Dr. Lundell's letter is beneficial from a general knowledge standpoint, it is of little probative value with respect to claimant's case specifically.

## VI. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm** the ALJ's decision.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 11th day of May, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa