**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| DAWN M. PORTER, | |
| Plaintiff, | No. C17-0110-LTS |
| vs. | |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations,[1] | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |
| Defendant. | |

## I.   INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable C.J. Williams, Chief United States Magistrate Judge.  *See* Doc. No. 19.  Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Dawn M. Porter's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq.

Porter filed timely objections (Doc. No. 20) to the R&R, and the Commissioner has responded (Doc. No. 21).  The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official.  As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner.  As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.  For simplicity, I will continue to refer to the defendant as "the Commissioner" throughout this order.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.,* 879 F.2d 441, 444 (8th Cir. 1989). The court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188

(8th Cir. 1994)). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true "even if [the court] might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

## B.  *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed the district court judge "would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.   THE R&R

Porter alleged disability based on depression, anxiety, personality disorders and substance abuse/addiction disorders. AR 14. The record also demonstrates diagnoses of diabetes mellitus and dermatitis/psoriasis. *Id.* In support of her claim, Porter submitted a residual functional capacity (RFC) opinion by her treating psychologist, Laura Lundell, Psy.D. AR 606-08. Although Dr. Lundell opined that Porter had disabling symptoms as a result of her mental health diagnoses, the ALJ gave "little weight" to this opinion and determined that Porter retained the RFC to work. At issue is (1) whether the ALJ erred in attributing little weight to Dr. Lundell's opinions and (2) whether the appeals council erred in failing to properly evaluate new and material evidence from Dr. Lundell. *See* Doc. No. 13.

After summarizing Dr. Lundell's RFC opinion and considering the standard for evaluating a treating physician's RFC opinion, Judge Williams found that the ALJ offered good reasons for giving the opinions little weight:

> I find the ALJ properly discounted the weight he afforded to Dr. Lundell's opinions. First, the ALJ correctly concluded that Dr. Lundell's opinions were not well reasoned, lacked analysis, and were unsupported by citation to signs and laboratory reports. In her November 2016 opinion,

4

Dr. Lundell opined that claimant met the criteria for Listing 12.06, Anxiety-related disorders, but did not explain how she reached this conclusion. (AR 589, 90). Although Dr. Lundell briefly discussed claimant's diagnoses of PTSD and amphetamine use disorder, Dr. Lundell did not explain how the existence of the two diagnoses led her to conclude that claimant met Listing 12.06, and the relationship is not readily apparent.

Second, the ALJ correctly noted that Dr. Lundell's opinion that claimant's impairments met the requirements for a listed impairment invaded the Commissioner's province. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.").

Third, the ALJ correctly found that Dr. Lundell's opinions were inconsistent with psychiatric records and evaluations performed by Ms. Allen-Benitz. In contrast to Dr. Lundell's significant limitations regarding work-like procedures, Ms. Allen-Benitz noted during the same timeframe that claimant was "Alert and oriented to all spheres. Recent and remote memory appears intact. No evidence of current hallucinations, delusions, paranoia, and obsessions. Thought process is linear, logical, and goal-directed. Denies current suicidal or homicidal thoughts, plan, or intent. Judgment, reasoning, and insight are considered fair. Impulse control is considered fair." (AR 592). In October 2013, Ms. Allen-Benitz noted very similar findings and added that claimant appeared to be of at least average intelligence. (AR 569). Further, Dr. Lundell's own records are inconsistent with her opinions. Claimant reported assisting her stepdaughter in the stepdaughter's salon (AR 594), had started an Etsy business with her stepdaughter (*id.*), had travelled to Minnesota (AR 595), reported improvement following a change in her living situation (*id.*), and was dating. (AR 596). The ability to engage in activities of this sort are inconsistent with the disabling anxiety to which Dr. Lundell opined.

Importantly, there is substantial evidence in the record as a whole to support the ALJ's RFC assessment. Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record. *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

5

The ALJ did rely on other such medical evidence in assessing claimant's RFC. The ALJ afforded great weight to the state agency medical and psychological consultants. (AR 24). The psychological consultants found that claimant had affective disorders, anxiety disorders, personality disorders, and substance addiction disorders, all of which the consultants considered to be severe impairments. (*Id.*). Further,

> [t]he psychologists found the claimant would have mild restrictions in daily activities, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and no episodes of decompensation. Functionally, the consulting psychologists opined the claimant would have some difficulty concentrating for extended periods, remembering, understanding, and carrying out detailed instructions, and would experience some difficulty interacting appropriately with others at times. However, the psychologists opined the claimant retained the capacity to perform simple, repetitive tasks consisting of 1-2 step commands in a work setting with reduced social interaction.

(*Id.*). In addition to the consultants, the ALJ considered medical records from David Fox, LISW, who "noted impressions of posttraumatic stress disorder, adjustment disorder with anxiety, amphetamine dependence, and a GAF score of 48." (AR 18). As noted above, the ALJ also considered the opinions of Ms. Allen-Benitz and afforded Dr. Lundell's opinions little weight, which is greater than no weight.

The ALJ also considered the records obtained from Courtney Hoelscher, ARNP (AR 19), Rogerio Ramos, M.D. (*Id.*), and Daniel Courtney, Ph.D. (AR 19-20), though the ALJ did not engage in an in-depth discussion of the findings of any of the aforementioned. Even if the ALJ did not rely on the records of the three final practitioners in assessing claimant's RFC, and instead merely noted the existence of the records, I would still find that the ALJ's decision is supported by substantial evidence on the record as a whole. The assessments from the state agency consultants are highly probative on claimant's disability status, as are Ms. Allen-Benitz's notes, and Dr. Lundell's notes, even though the ALJ discounted the weight afforded to the latter. As such, I recommend that the Court find that the ALJ did not err in assessing claimant's RFC. Further, I recommend that the Court find that the ALJ's decision is supported by substantial evidence on the record as a whole.

Doc. No. 19 at 11-13.

Next, Judge Williams addressed whether the Appeals Council erred by failing to consider new and material evidence from Dr. Lundell when it declined to review the ALJ's decision. He first concluded that "the Court does not have jurisdiction to review the Appeals Council's decision denying review." *Id.* at 14 (citing *Piepgras v. Chater*, 76 F.3d 233, 238 (8th Cir. 1996)). Judge Williams then stated:

> Even if this Court did have jurisdiction to review the Appeals Council's action, I would still recommend that the Court uphold the final decision of the Commissioner. Although the letter explains the difference between psychotherapy notes and disability certifications, the letter does not address the marked differences and inconsistencies with other medical evidence of record and with claimant's own subjective allegations. Further, Dr. Lundell's letter, much like her treatment notes, lacks analysis and is vague. For instance, Dr. Lundell does not identify the psychotherapy notes she is addressing when explaining why differences may exist. Perhaps Dr. Lundell means all of the psychotherapy notes, but it is simply unclear. As a result, while Dr. Lundell's letter is beneficial from a general knowledge standpoint, it is of little probative value with respect to claimant's case specifically.

*Id.* at 14-15. Judge Williams recommends that I affirm the ALJ's decision. *Id.* at 15.

## IV. DISCUSSION

Porter objects to Judge Williams' conclusion that the ALJ properly evaluated Dr. Lundell's RFC opinion. Porter further objects that Judge Williams did not address her argument that the ALJ erred in failing to fully and fairly develop the record by ordering a consultative report. I will review those issue de novo.

Porter does not object to Judge Williams' conclusions regarding the Appeals Council's treatment of Dr. Lundell's clarification letter. I find no error in those conclusions, clear or otherwise.

7

## A. Dr. Lundell's Opinion

Porter argues that the ALJ erred in giving Dr. Lundell's RFC opinion little weight and contends that accepting the opinion would result in a finding that she is disabled. The ALJ's RFC opinion is only slightly less restricting that Dr. Lundell's RFC opinion. Specifically, the ALJ found that Lundell had the following non-exertional limitations:

> The claimant is limited to unskilled work in that she is able to understand, remember, and carry out only routine, repetitive tasks. The claimant should have no more than occasional interaction with coworkers and the general public. The claimant is able to maintain focus, attention, and concentration for only up to two hours at a time. There should be no more than occasional changes in the general nature of the work setting or work tasks.

AR 16. The Vocational Expert (VE), Melinda Stahr, testified that a hypothetical person with the above RFC would be able to work at jobs such as hand packager, clean-up worker and car detailer. AR 61.

Similarly, Dr. Lundell opined that Porter is "seriously limited, but not precluded" in her ability to:

> Remember work-like procedures[;]
>
> Understand and remember very short and simple instructions[;]
>
> Carry out very short and simple instructions[;]
>
> Maintain attention for two hour segment[;]
>
> Sustain an ordinary routine without special supervision[;]
>
> Work in coordination with or proximity to others without being unduly distracted[;]
>
> Ask simple questions or request assistance[;]
>
> Deal with normal work stress[; and]
>
> Understand and remember very short and simple instructions[.]

AR 607. So far, then, the two opinions track each other. Dr. Lundell also concluded that Porter would be "[u]nable to meet competitive standards" in attendance, workplace decision making, pace, responding to criticism and travel to unfamiliar places. AR 608-

8

09. Notably, Dr. Lundell opined that Porter would miss four or more days of work per month, a condition which, standing alone, precludes competitive employment in any job. AR 62. Dr. Lundell attributed the above limitations to the dissociative symptoms caused by Porter's PTSD:

> Ms. Porter has experience numerous, significant, traumatic experiences throughout her life beginning as a young child which include: physical, emotional, sexual and verbal abuse as well as domestic violence. Additionally, in December, 2012, Ms. Porter's husband died by suicide— an image that she cannot get out of her mind. This accumulation of trauma and the negative consequence of such experience is enough to be considered complex trauma. Ms. Porter's experience with complex trauma includes dissociative episodes in which she feels disconnected from reality, concentration and memory difficulties, paranoia, flashbacks and associated avoidance of a multitude of trauma triggers. The complex trauma and its consequences result in marked restriction of social functioning, repeated episodes of prolonged decompensation and marked difficulties in maintaining concentration.

AR 589. The ALJ's RFC does not include Dr. Lundell's restrictions related to pace, criticism and attendance.

An opinion by a treating physician must be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ must give "good reasons . . . for the weight [the ALJ gives a] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). By contrast, a consulting expert's opinion is generally entitled to less weight and will normally not constitute substantial evidence, particularly where the opinion is inconsistent with the record as a whole. *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir.2000); *Cowles v. Colvin*, 102 F. Supp. 3d 1042, 1055 (N.D. Iowa 2015).

It is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the

responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (citation omitted). However, any physician's conclusion regarding a claimant's RFC addresses an issue that is reserved for the ALJ. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). The ALJ's RFC finding must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of limitations," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 931-31 (8th Cir. 2016). If the ALJ's RFC is within the "zone of choice" permitted by the evidence, the court must affirm. *Culbertson*, 30 F.3d at 939.

Although there is some medical evidence to support Dr. Lundell's non-exertional limitations, nothing in the record suggests that Porter will be absent from work four or more days a month, or that she will be unable to meet competitive standards for pace. Porter's treatment record suggests that her largest issues are methamphetamine abuse and concomitant legal troubles. Porter first sought treatment for her mental health issues in October 2013, when she was ordered to do so by a court.[2] AR 343. During her first appointment at Prairie Ridge on October 10, 2013, Porter reported long-standing struggles with depression, substance abuse, adult attention-deficit/hyperactivity disorder (ADHD), obsessive compulsive disorder (OCD), and anxiety.[3] AR 344. Porter stated that she did not want medication as she felt "it makes her feel worse."[4] AR 351. The

---

[2] The treatment notes from this time period indicate that Porter reported seeing therapists since she was a teenager, as well as receiving outpatient mental health treatment for her substance abuse issues. However, records were not provided for mental health treatment prior to October 2013. AR 343-44.

[3] Dr. Lundell's treating source opinion limits Porter's diagnoses to substance abuse disorder and PTSD. *See* AR 589-90, 607-09.

[4] Nevertheless, Porter reported that she began to take Zoloft from an "old prescription," against her therapist's advice, on November 8, 2013. AR 364-65. Dr. Hansen counseled Porter against

10

licensed social worker completing the intake assessment agreed that she did not need a referral for medication management and scheduled weekly therapy to address her situational stressors. At this time, Porter's mental status was assessed and found to be negative for delusions, paranoia and hallucinations. AR 353. She was described as motivated, alert and oriented, although she was anxious and depressed during the exam. AR 354.

Porter began therapy as scheduled on October 21, 2013, with Jen Hansen, Ph.D, and attended a total of eight individual therapy sessions between October 21 and February 28, 2014. AR 358-70. Although she repeatedly endorsed difficulties related to bereavement, depression and trauma, the majority of the therapy sessions involved discussion of her ongoing problems attempting to regain custody of her children from DHS. AR 362, 365, 368, 370. In spite of the stressors in her life, Porter was repeatedly assessed as oriented, with appropriate attire, adequate hygiene, and active or motivated involvement in her therapy sessions. Dr. Hansen noted no evidence of psychotic symptoms, or suicidal or homicidal ideation. This is consistent with the December 6, 2013, mental status evaluation performed by Allen-Benitz:

> Mood is anxious, pleasant, with congruent affect and brightening in conversation. Eye contact is good. Speech is pressured. She is interactive and cooperative. Alert and oriented to all spheres. Recent and remote memory appears intact. Intelligence appears at least average. No evidence of current hallucinations, delusions, paranoia, and obsessions. Thought

---

this choice, and at a later appointment Dr. Hansen noted that Porter had lied to DHS and stated she had a current prescription for Zoloft. *Id.* at 365. On December 6, 2013, Porter was seen by Shelby Allen-Benitz, ARNP, for medication management. *Id.* at 358. At that appointment, Porter denied using any psychotropic medications and was ultimately prescribed Zoloft. *Id.* at 360. One month later, on January 3, 2014, Dr. Hansen noted that Porter had failed to re-start Zoloft. *Id.* at 367. On January 31, she reported that she still was not taking Zoloft because she "didn't like the way it was making her feel." *Id.* at 368. One month later, on February 28, 2014, she requested to be prescribed Xanax. *Id.* at 370. It is not apparent from the medical records whether she was prescribed or ever began taking Xanax. Porter's dishonesty regarding her medication use, as well as her failure to appropriately use medications when prescribed, are "good reasons" the ALJ may rely upon to discount an inconsistent treating source opinion. *Owen v. Astrue*, 551 F.3d 233, 236 (8th Cir. 1996).

process is circumstantial with easy redirection. Denies current suicidal or homicidal thoughts, plan, or intent. Judgment, reasoning, and insight are considered fair. Impulse control is fair. Denies being the subject or perpetrator of violence in any environment.

AR 360. The lack of recorded cognitive impairments in 2013 is inconsistent with Dr. Lundell's opinion regarding Porter's ability to meet competitive standards for pace and concentration, and constitute a good reason to discount that portion of the opinion. *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (ALJ entitled to discount opinions that are inconsistent with or contrary to medical evidence as a whole); *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005) (physician's mild examination findings were inconsistent with extreme limitations referenced in RFC opinion, and constituted a good reason to give the physician's opinion less weight).

Porter did not receive any further mental health treatment until September 18, 2015, when she was admitted to the emergency room for alcohol and methamphetamine intoxication. AR 400. After discharge, she was voluntarily admitted to a psychiatric hospital. AR 411. Upon her admission, her mental status was positive for sleep disturbance but negative for suicidal ideas and hallucinations. AR 414. Porter stated that she felt depressed but the doctor's notes indicate that she was not nervous or anxious during the examination. *Id.* Judgment, thought content, cognition and memory were all judged to be normal. AR 415. Porter was again prescribed Zoloft, and underwent a substance abuse evaluation. AR 422. Porter downplayed her substance abuse problems, stating that substance abuse is a "small part" of her problems and that she could "take it or leave it." AR 429. The substance abuse counselor recommended that Porter participate in inpatient substance abuse treatment but she did not do so. Porter was discharged after three days with instructions to keep appointments for psychiatric medications and therapy. AR 411. There are no medical records following discharge indicating that Porter followed up on this instruction. Non-compliance with a

12

recommended course of treatment is a good reason to discount a treating source's RFC opinion, as well as the claimant's self-reported symptomology. *Owen*, 551 F.3d at 800.

After another substantial gap in treatment, and a brief period of incarceration, Porter was admitted to a residential drug treatment program on June 14, 2016. She was successfully discharged on July 20, 2016, while being deemed to be at a high risk of relapse. AR 531-37. A mental status examination by Rogerio Ramos, M.D., noted that Porter was alert, oriented, with intact memory and normal speech, although her judgment and impulse control were considered poor. AR 533. After discharge, Porter re-initiated ongoing therapy, attending a few sessions with Courtney Daniels, Ph.D., before switching to Dr. Lundell.

As before, many of Porter's therapy sessions focused on her legal troubles. AR 541-50, 567, 572-78. Throughout her treatment, Porter endorsed symptoms of tearfulness, anxiety, paranoia and insomnia. However, her mental status was routinely assessed as normal. Porter was alert and oriented, with easily re-directed thought processes, intact memory, and fair judgment, reasoning, insight and impulse control. Porter continued on Zoloft without incident through this period of treatment notes. Again, the lack of recorded cognitive impairments in 2016 is inconsistent with Dr. Lundell's opinion regarding Porter's ability to meet competitive standards for pace and concentration, thus providing a good reason to discount that portion of her opinion. *Travis*, 477 F.3d at 1041; *Garza*, 397 F.3d at 1089. Further, there is nothing in the record during this period to support absences from work of greater than four days per month. The ALJ is free to disregard those portions of a treating physician's RFC opinion that are not supported by the treatment record.

Further, I note that the difference between Dr. Lundell's RFC opinion and the ALJ's RFC opinion is very slight. Although Porter argued that the ALJ's position was unsupported by the medical record, the similarity between the two opinions, referenced above, demonstrates that the ALJ seriously considered Dr. Lundell's opinion and accepted those portions that are supported by the record. The ALJ had good reasons—

consisting of inconsistencies between the record and the opinion, a lack of support for the most disabling limitations in the opinion, and Porter's failure to comply with her treatment plans—to give Dr. Lundell's opinion less weight. Thus, I find that the ALJ's treatment of Dr. Lundell's opinion was proper and that the resulting RFC is supported by substantial evidence on the record as a whole. Porter's objection is overruled.

B.  *Failure to Order a Consultative Exam*

Porter also argues that Judge Williams erred in failing to consider her argument that the ALJ should have ordered a consultative exam. Porter argues that "if the Commissioner felt the medical records from Dr. Lundell did not supply enough information to make an informed decision, she should have ordered a consultative examination." Doc. No. 20 at 5 (citing 20 C.F.R. § 404.1517; *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992); Doc. No. 15 at 23-24). In Porter's brief, this argument was couched within an argument that the ALJ's RFC opinion was "not supported by substantial medical evidence from a treating or examining source." Doc. No. 15 at 21 (citing, among other cases, *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) for the proposition "that it was improper for the ALJ to rely on the opinions of reviewing physicians alone.").

Although Porter is correct that Judge Williams did not specifically address whether an additional consultative exam was necessary in this case, I note that Judge Williams did consider whether there was substantial medical evidence in support of the ALJ's RFC. *See* Doc. No. 19 at 12 ("Importantly, there is substantial evidence in the record as a whole to support the ALJ's RFC assessment." (internal citations and quotations omitted)).

In addition, Porter's argument that a consultative exam was necessary is based on the faulty premise that there was not sufficient medical evidence in the record from which the ALJ could establish an accurate RFC. As discussed above, it is clear that the ALJ relied on Porter's treatment notes, including those authored by Dr. Lundell, in

14

establishing Porter's RFC. Indeed, the ALJ's RFC opinion is consistent with Dr. Lundell's opinion in most respects. This is not a *Nevland* case, in which the ALJ's evaluation of a treating physician opinion left the record essentially devoid of medical evidence. *See, e.g., Fitzgerald Morris v. Colvin*, No. C14-4048-LTS, 2016 WL 3360506 at *8-9 (N.D. Iowa June 16, 2016). Because there is sufficient medical evidence supporting the RFC, there was no need for the ALJ to order an additional consultative examination. Porter's objection is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff Dawn M. Porter's objections (Doc. No. 20) to the Report and Recommendation (Doc. No. 19) are **overruled**.

2. I **accept** Chief United States Magistrate Judge C.J. Williams' Report and Recommendation without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Williams' recommendation:

   a. The Commissioner's determination that Porter was not disabled is **affirmed**; and

   b. Judgment shall enter against Porter and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 25th day of June, 2018.

_____
Leonard T. Strand, Chief Judge